UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


IMER GASHI,

         Petitioner,

v.                                     Case No. 2:15-cv-51
                                        HON. GORDON J. QUIST

CATHERINE BAUMAN,

         Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner Imer Gashi, filed this petition for writ of habeas corpus challenging his jury conviction for first-degree criminal sexual conduct.  Petitioner was sentenced to a term of imprisonment of 10 to 40 years. Petitioner appealed his sentence to the Michigan Court of Appeals, which denied his application for leave to appeal for lack of merit in the grounds presented on April 4, 2011 (PageID.374).  The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 26, 2011 (PageID.391).  Petitioner then filed a motion for relief from judgment in the trial court raising the claims that his plea was involuntary and that he received ineffective assistance of counsel.  That motion was denied on March 25, 2013 (PageID.672-677).  Petitioner's delayed application for leave to appeal was denied by the Michigan Court of Appeals on March 14, 2014 (PageID.678).  The Michigan Supreme Court denied Petitioner's application for leave to appeal on November 19, 2014 (PageID.827).  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.

Petitioner alleges that:

I. The trial court failed to advise defendant that he could withdraw his plea if the court rejected the sentence agreement.

II. Petitioner was deprived his constitutional right to effective assistance of counsel.

III. The Michigan Court of Appeals should have ruled that the trial court's sentencing of 10 to 40 years was erroneous.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

2

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412.  Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues he is entitled to have his plea set aside for it was not made freely, voluntarily, or intelligently.  A guilty plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 749 (1970).  The United States Constitution requires that a defendant be informed of all of the direct consequences of his plea.  *See Brady*, 397 U.S. at 755.  A review of the plea hearing fails to provide any support for Petitioner's claim that his guilty plea was not knowingly and intelligently made.

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.*  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon Petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29 (1992).  In the present case, after a thorough interrogation of Petitioner, the state judge found that Petitioner's plea of guilty was entered knowingly and voluntarily.  The record shows that Petitioner made his plea knowingly and voluntarily.

| | |
|---|---|
| Mr. Bramble: | Your Honor, before the Court are two matters, they are the People of the State of Michigan versus Nesret Gashi and Imer Gashi.  On Mr. Gashi, it is 10-05121-FC. |
| | Mr. Rob German represents Imer Gashi, and it's my understanding Mr. Lambert represents Defendant Nesret Gashi. |
| | Your Honor, it is my understanding that both defendants are going to enter pleas pursuant to the following plea agreement. |

Upon the successful plea and sentence to Count One in each of these files, Court Two, Three and Four would be dismissed.

In addition, we would recommend a sentencing guideline range for the minimum sentence between the months of 51 months and 135 months, and – Five and Six would be dismissed.

So it's a plea to Count One in each file. The remaining counts would be dismissed. Agreed-upon sentencing guidelines range from the minimum sentence of 51 months to 135 months.

In addition, we would agree not to write charges regarding the incident involving the victim, [MC]. That is my understanding of the plea agreement.

The Court:      To each counsel, have your respective clients filled out an Advice of Rights form?

Mr. German:     I believe they have before, but we can do another one.

Defendant
Imer Gashi:     We did it before we came in.

Mr. Lambert:    I think they have.

The Court:      Well, go ahead and just sign those forms now.

(Both defendants signing forms)

The Court:      You are Imer Gashi?

The Defendant:  Yes, sir.

The Court:      Did I pronounce that first name correctly?

The Defendant:  Imer.

The Court:      What is your address, please?

The Defendant:  5274 Newcastle, S.E.

The Court:      That's Kentwood?

5

The Defendant:    Yep.

The Court:    All right.

                  Are you Nesret Gashi?

The Defendant:    Yes.

The Court:    Your address?

The Defendant:    Same, 5274 Newcastle.

The Court:    All right.  My clerk will swear you both in at this point.

The Clerk:    Raise your right hand please.

                  Do you solemnly swear or affirm that the testimony you're about to give in this matter will be the truth, the whole truth, and nothing but the truth, so help you God?

The Defendant:    Yes.

The Defendant:    Yes.

The Court:    And I'll advise you both you're being charged in Count One of your respective Informations with the crime of criminal sexual conduct, first degree, where the maximum period of imprisonment is life.

                  Do you understand that, Mr. Gashi?

The Defendant:    Yes, I do.

The Defendant:    Yes.

The Court:    And Mr. Nesret Gashi?

The Defendant:    What did you say?

The Court:    Do you understand the charge here in Count One, criminal sexual conduct, first degree, where the maximum period of imprisonment is life?

6

|  |  |
|---|---|
|  | Do you understand that? |
| The Defendant: | Yeah. |
| The Court: | All right.  I'll further advise both of you—and this is going to be no contest, correct, counsel? |
| Mr. German: | Yes, correct. |
| Mr. Lambert: | Yes. |
| The Court: | Each of you, if you plead no contest here today to Count One, you will be giving up any right you would have to a trial and all the rights that you would have at such a trial.

Do you understand that, Mr. Imer Gashi? |
| The Defendant: | Yes, I do. |
| The Court: | And Mr. Nesret Gashi? |
| The Defendant: | Yes, sir. |
| The Court: | And Mr. Imer Gashi, you have signed the Advice of Rights form? |
| The Defendant: | Yes, I did. |
| The Court: | Do you understand those rights? |
| The Defendant: | Yes, I do. |
| The Court: | Do you understand you're giving up or waiving those rights by pleading in this case? |
| The Defendant: | I do. |
| The Court: | And you understand you will not have a trial? |
| The Defendant: | I do. |
| The Court: | And Mr. Nesret Gashi, you've signed read and signed [sic] the Advice of Rights form? |

The Defendant:   Yes, sir.

The Court:        Do you understand those rights?

The Defendant:   Yes.

The Court:        Do you understand you're giving up or waiving those rights by pleading no contest?

The Defendant:   Yes.

The Court:        You also understand you'll not have a trial?

The Defendant:   Yes.

The Court:        And I'll advise each one of you, that if your respective pleas are accepted here today, you'll be giving up any claim that the plea was the result of promises or threats that were disclosed at this proceeding, or that it was not your own choice to enter these respective pleas.

                  Do you understand that, Mr. Imer Gashi?

The Defendant:   I do, your Honor.

The Court:        Mr. Nesret Gashi?

The Defendant:   Yes.

The Court:        And Mr. German, has the plea agreement been correctly stated?

Mr. German:      It has, your Honor.

The Court:        All right.

                  And Mr. Imer Gashi, has the plea agreement been correctly stated?

The Defendant:   Yes, it has.

The Court:        Has anybody promised you anything in addition to that?

The Defendant:   No, your Honor.

The Court:            What is your plea to Count One?

The Defendant:    No contest.

The Court:            Has anybody threatened you in any way to plead?

The Defendant:    No.

The Court:            Is it your own choice to plead?

The Defendant:    Yes.

The Court:            All right.

And just so we have this on the record, the reason, Mr. German and Mr. Lambert, for the no-contest plea?

Mr. German:        Potential civil liability.

Mr. Lambert:       I agree, your Honor

The Court:            Mr. Lambert, the plea agreement has been correctly stated?

Mr. Lambert:       It has, your Honor.

The Court:            Mr. Nesret Gashi, the plea agreement has been correctly stated?

The Defendant:    Yes.

The Court:            Anybody promised you anything in addition to that?

The Defendant:    No.

The Court:            What is your plea?

The Defendant:    No contest.

The Court:            Anybody threatened you in any way to cause you to plead?

The Defendant:    No.

9

The Court:        Is it your own choice to plead?

The Defendant:  Yes, sir.

The Court:        The Court has had an opportunity to review and read the preliminary examination transcript testimony in this case and finds from that testimony a factual basis to accept each one of these no-contest pleas to criminal sexual conduct, first degree.

                  The Court finds from the sworn testimony of [HV] that on or about February 23 of this year at 3149 Popular Creek Drive, S.E., Apartment 103, that each one of the defendants here engaged in sexual penetration, that being penile/vaginal, with the victim here, [HV], while aided and abetted by one or more other persons, namely, the other co-defendants, and that force or coercion was used to accomplish the sexual penetration.

                  Mr. Bramble, anything you would want to add to the factual basis here?

Mr. Bramble:     No, your Honor.  Thank you.

The Court:        Mr. German, are you satisfied that there's a factual basis?

Mr. German:      I am, your Honor.

The Court:        Mr. Lambert?

Mr. Lambert:     I am.

The Court:        All right.

                  The Court then will accept each no-contest plea to criminal sexual conduct, first degree.

                  The Court finds that the pleas are understanding, voluntary and accurate.

10

> Either counsel or any counsel here aware of any promises, threats or inducements other than what's been mentioned on the record?

Mr. Bramble:   No, your Honor.

Mr. Lambert:   No, your Honor.

Mr. German:   No, your Honor.

The Court:   And have I complied with the court rule?

Mr. Bramble:   Yes, your Honor.

Mr. Lambert:   Yes.

Mr. German:   You have, your Honor.

The Court:   All right.

> Each one of the defendants is remanded to the Kent County jail without bond to await sentencing December 8.

> Thank you.

11/1/10 Plea Tr. (PageID.729-737).

The record is clear that Petitioner made his plea knowingly and voluntarily. It is clear that Petitioner understood the rights that he was giving up by entering his plea and that Petitioner was aware that he could be sentenced to a maximum sentence of life imprisonment. In the opinion of the undersigned, the Michigan courts were correct in its finding that Petitioner entered into his plea knowingly and voluntarily. The Michigan courts' decisions did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges that his counsel was ineffective for failing to fully advise him regarding the consequences of his plea.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id*. at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the *Strickland* standard continues to apply.  As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See Lafler*, 566 U.S. at 164-167.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Missouri v. Frye*, 566 U.S. 133, 147 (2012).  The *Lafler* Court thoroughly rejected the argument that a subsequent fair trial renders counsel's earlier ineffective assistance irrelevant.  566 U.S. at 168.  The Supreme Court explained that a petitioner must establish four factors to show ineffective assistance of counsel for failing to properly give advice regarding a plea offer:

> In these circumstances a defendant must show that [1] but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., [2] that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [3] that the court would have accepted its terms, and [4] that the conviction or sentence, or both, under the offer's terms would have

12

been less severe than under the judgment and sentence that in fact
were imposed.

*Id.* at 164.

Here, Petitioner has not met his burden of proving there was prejudice, nor has he established the four factors to fulfill the *Lafler* test.  Petitioner claims he was denied the effective assistance of counsel because: (1) trial counsel failed to advise defendant of the immigration consequences of his plea, (2) trial counsel failed to advise clients that he would be registered as a sex offender, (3) trial counsel coerced Petitioner to plead no contest, and (4) trial counsel misrepresented the sentencing and time Petitioner would have to serve.

Defendant counsel is obligated to advise a criminal defendant if his plea will subject him to deportation.  *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).  Petitioner's counsel did advise Petitioner of the immigration consequences of his plea.  11/10/10 Motion (PageID.354-357). Petitioner indicated that he understood the potential consequence that his plea could result in his deportation (PageID.357).  Trial counsel fulfilled the obligation under *Padilla* to advise Petitioner of potential deportation following a no contest plea.  In the opinion of the undersigned, Petitioner cannot show that his counsel was ineffective.

Sex-offender registration is considered a collateral consequence of a guilty plea. *United States v. Cottle*, 355 F. App'x 18 (6th Cir. 2009).  "All 10 federal appellate courts to consider the question decided, in the words of one, that 'counsel's failure to inform a defendant of the collateral consequences of a guilty plea is never' a violation of the Sixth Amendment." *Chaidez v. United States*, 568 U.S. 342, ___; 133 S.Ct. 1103, 1109 (2013).  Trial counsel had no obligation to warn Petitioner that he would have to register as a sex-offender.

Petitioner offers no evidence that trial counsel coerced Petitioner into pleading no contest.  Trial counsel simply advised Petitioner to plead no contest based upon the facts of the

case.  At the plea hearing, Petitioner acknowledged he was aware that the maximum penalty for

his crime was life imprisonment.   Petitioner was ultimately sentenced to less than a life

imprisonment sentence.  Petitioner's ineffective assistance of counsel claims were rejected in the

trial court when Petitioner presented them in his motion for relief from judgment.  In the opinion

of the undersigned, the state trial court properly applied the *Strickland* test to determine that there

was no ineffective assistance of counsel.  Moreover, the state trial court's decision was not based

upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.

Petitioner claims that the trial court erroneously sentenced Petitioner to 10 to 40

years and that the Michigan Court of Appeals should have ruled on the erroneous sentencing.

Similarly, Petitioner claims that the judge inaccurately considered the sentencing guidelines.

Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus

proceedings.  *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d

515 (5th Cir. 1970).  To the extent that Petitioner challenges the correctness of his sentence on the

basis of state law, Petitioner is not entitled to habeas review unless there has been a fundamental

miscarriage of justice.  *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929

(1990).

Furthermore, Mich. Comp. Laws § 750.520b(1)(d) provides for punishment of

imprisonment for life or for any term of years.  Therefore, Petitioner has not set forth a federal

question because his sentence was imposed within the state statutory limit.  *Haynes v. Butler*,

825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of
> the decision are not generally constitutionally cognizable, relief may
> be required where the petitioner is able to show that the sentence
> imposed exceeds or is outside the statutory limits, or is wholly

> unauthorized by law.  *E.G.*, *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976).  If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24.  Petitioner's sentence does not exceed the statutory limit nor has Petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion.  In the opinion of the undersigned, the state trial court's sentence for Petitioner fell within the statutory limit and was not contrary to any established federal law as determined by the United States Supreme Court, nor was the Michigan court decisions rejecting Petitioner's claims erroneous.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

15

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of Petitioner claims of ineffective assistance of counsel, erroneous sentencing, and an involuntary and unknowing plea. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    June 20, 2017                          */s/ Timothy P. Greeley*
                                              TIMOTHY P. GREELEY
                                              UNITED STATES MAGISTRATE JUDGE